ARTHUR P. DELL *et al.*, Plaintiffs-Appellees, v. THE CITY OF STREATOR, Defendant-Appellant.

Third District   No. 3—88—0695

Opinion filed January 22, 1990.

Myers, Daugherity, Berry & O'Conor, Ltd., of Streator (Stephen C. Myers, of counsel), for appellant.

John A. Hayner, of Ottawa, for appellees.

JUSTICE BARRY delivered the opinion of the court:

The City of Streator (the City), defendant, appeals from a perma-

nent injunction entered by the circuit court of La Salle County which prevents the City from terminating certain medical and life insurance benefits provided to retired, qualified, nonunion employees and office holders of the City.

Since at least 1970, the City of Streator provided to its nonunion employees and office holders the same fringe benefits as had been negotiated with the union representing all other City employees. Beginning in 1975, the collective bargaining agreement with the union provided for the City to pay premiums for life insurance benefits of $2,500 and for health insurance benefits for life for all employees who retire at or after age 55 with at least eight years of service.

The City extended these same benefits to those nonunion employees who thereafter retired and who were qualified by age and length of service. Plaintiffs in this action were all nonunion employees and office holders who retired after 1975 and who otherwise qualified for the benefits. Plaintiffs were informed by department heads and other officials that the City would continue to pay health and life insurance premiums for the lifetime of those employees who qualified at retirement. Each year the City appropriated the necessary funds and paid the premiums for these benefits for plaintiffs until 1987, when the city council voted to require nonunion retirees to contribute the full cost of participating in the City's group insurance plans.

The seven plaintiffs filed a complaint for an injunction to prohibit the City from terminating the benefits previously received. There is no dispute that these plaintiffs retired between 1975 and 1987 and that all qualified by age and service for the benefits. It is also not disputed that the nonunion employees and office holders did not receive the same pay raises that union members received under their collective bargaining contracts.

The trial court found that the City's promise to pay medical and life insurance premiums for qualified retirees constituted part of the compensation for which plaintiffs worked. The court enjoined the City from terminating these benefits, and the City has perfected this appeal.

The City contends that there is one determinative issue: Was the agreement to pay health insurance benefits for the life of qualified nonunion employees *ultra vires* and void because it amounted to a contract made or an expense incurred without a prior appropriation having been made for the contract or expense, in violation of section 8—1—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 8—1—7)? The City relies on the many cases which have held that a City is not bound by a contract which violates the provisions of

section 8—1—7. *E.g., Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286, 478 N.E.2d 1187 (two-year union contract executed prior to passage of appropriations was void); *Mulligan v. Village of Bradley* (1985), 131 Ill. App. 3d 513, 475 N.E.2d 1029 (three-year contract with village administrator with no appropriations for salary was void); *Hogan v. City of Centralia* (1979), 71 Ill. App. 3d 1004, 390 N.E.2d 595 (two-year contract for position of police chief with only one year's salary previously budgeted and appropriated was void).

■ The principle which controls the instant case is not the statutory provision asserted by defendant City, but rather is the doctrine of equitable estoppel: Where a contract is within the general power of a corporation but a portion of the contract exceeds the corporate powers and where the City receives a benefit, it is equitably estopped from refusing payment. The Illinois Supreme Court has stated:

> "[M]unicipal corporations, as well as private corporations and natural persons, are bound by principles of common honesty and fair dealing." *McGovern v. City of Chicago* (1917), 281 Ill. 264, 284, 118 N.E. 3.

The case of *McGovern v. City of Chicago*, though more than 70 years old, is instructive of the principle. There the City of Chicago had awarded a 13-month contract to McGovern to make needed repairs to city streets, as directed by the superintendent of streets, and to be paid at a particular rate based on area and kind of repairs. The city council did not make an appropriation for the full amount, and at the conclusion of the contract term, the city refused to pay for some $117,394 of work performed on the ground that the contract was void for want of an appropriation and for extending beyond one fiscal year. The supreme court of Illinois ruled that the city had the power to contract to repair its streets, that McGovern had performed in good faith, and that the city was estopped to refuse payment on the ground that it had exercised its power improperly when it had received and accepted the benefit of the contract.

■ Illinois courts do recognize that those contracts expressly prohibited by law are *ultra vires* and thus unenforceable. (*E.g., DeKam v. City of Streator* (1925), 316 Ill. 123, 146 N.E. 550.) However, as we have previously held, a municipality has the power to enter into employment contracts with its employees, and the irregular exercise of that power does not entitle the city to accept its employees' labor without giving them the full compensation promised. *Eertmoed v. City of Pekin* (1980), 83 Ill. App. 3d 362, 404 N.E.2d 942.

■ We also observe that rights to lifetime life and medical insurance benefits have, in effect, "vested" for those retired employees who are union members as well as for plaintiffs. To deny plaintiffs their vested rights while paying benefits to union members would be discriminatory and might raise a constitutional question concerning impairment of contract rights.

The City also argues that any agreement with nonunion employees was void because there was no formal, recorded action by the city council, but rather some sort of "secret" action. Plainly it was a matter of public record that the city council appropriated the money to pay insurance benefits for these plaintiffs, after their retirement and until November of 1987. That was hardly "secret" action. Also, the union collective bargaining agreement expressly provided for such lifetime retirement benefits, and it was no "secret" that nonunion employees had been promised the same benefits as union employees. The record does not support the City's contention, and the trial court's finding that the City had agreed to provide nonunion employees with the same benefits as union employees was not contrary to the manifest weight of the evidence. Furthermore, the evidence is more than sufficient to establish that these lifetime benefits were a part of the compensation for the work performed by these plaintiffs.

The 1987 ordinance of the city council purporting to change the benefits for retired persons will apply only to those nonunion employees retiring after the effective date of that ordinance. The City was properly held estopped to refuse to pay the agreed benefits to plaintiffs. The order of the circuit court of La Salle County is affirmed.

Affirmed.

HEIPLE and STOUDER, JJ., concur.